UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
MARYANN C. on behalf of herself and
all others similarly situated,

                    Plaintiffs,

TINA BURNARD, et. al, on behalf of themselves
and all others similarly situated,

                    Plaintiff-Intervenors,

                                    08-CV-3461
                                      (JFB)(ETB)

                    -against-

JANET DEMARZO, as Commissioner of the Suffolk
County Department of Social Services,

                    Defendant.
------------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ORDER OF CONTEMPT, AN INJUNCTION COMPELLING COMPLIANCE, EXTENSION OF THE COURT'S JURISDICTION, APPOINTMENT OF A SPECIAL MASTER, AND OTHER EQUITABLE RELIEF

**NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE, INC.**
Marc Cohan
Petra T. Tasheff
Laura F. Redman
Stephane Ariot
275 Seventh Avenue, Suite 1506
New York, NY 10001
Tel. (212) 633-6967

**EMPIRE JUSTICE CENTER**
Linda Hassberg
Touro Law Center PAC
225 Eastview Drive, Room 222
Central Islip, New York 11722
Tel. (631) 650-2306

**EMPIRE JUSTICE CENTER**
Bryan Hetherington
One West Main Street, Suite 200
Rochester, NY 14614
Tel. (585) 454-4060

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     A.  PLAINTIFFS ARE ENTITLED TO THE RELIEF REQUESTED
     IN THEIR MOTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     B.  PLAINTIFFS ARE ENTITLED TO AN ORDER OF CONTEMPT. . . . . . . . . . . . . . 7

          1.  THE ORDER IS CLEAR AND UNAMBIGUOUS. . . . . . . . . . . . . . . . . . . . 8

          2.  PLAINTIFFS HAVE PRESENTED CLEAR AND CONVINCING
          EVIDENCE OF DEFENDANT'S NON-COMPLIANCE WITH
          THE ORDER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

          3.  DEFENDANT HAS NOT DILIGENTLY ATTEMPTED IN A
          REASONABLE MANNER TO COMPLY WITH THE ORDER. . . . . . . . . . . . 9

     C.  PLAINTIFFS ARE ENTITLED TO AN INJUNCTION COMPELLING
     COMPLIANCE, EXTENDING THE JURISDICTION OF THE COURT, AND
     REQUIRED MONITORING. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     D.  PLAINTIFFS REQUEST THAT THIS COURT EXERCISE ITS
     POWER TO APPOINT A SPECIAL MASTER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITIES

**CASES**                                                  **PAGES**

*Frew v. Hawkins,*
540 U.S. 431 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Rufo v. Inmates of Suffolk County Jail,*
502 U.S. 367 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Berger v. Heckler,*
771 F.2d 1556 (2d Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12

*New York v. United States Dep't of Commerce,*
739 F. Supp. 761 (E.D.N.Y. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*E.E.O.C. v. Local 580, Int'l Ass'n of Bridge, Structural and*
*Ornamental Ironworkers, Joint Apprentice-Journeyman Educ. Fund,*
925 F.2d 588 (2d Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12

*United States v. Local 359, United Seafood Workers,*
55 F.3d 64 (2d Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*EEOC v. Local 638, Local 28 of Sheet Metal Workers' Int'l Ass'n,*
753 F.2d 1172 (2d Cir. 1985), *aff'd,* 478 U.S. 421 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Powell v. Ward,*
643 F.2d 924 (2d Cir.) (per curiam), *cert. denied,* 454 U.S. 832 (1981)
487 F. Supp. 917 (S.D.N.Y. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Hunter TBA, Inc. v. Triple V Sales,*
250 F.R.D. 116 (E.D.N.Y. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*King v. Allied Vision,* Ltd.,
65 F.3d 1051 (2d Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*New York v. U.S. Capital Funding, LLC,*
2011 U.S. Dist. LEXIS 87975 (E.D.N.Y. Aug. 9, 2011). . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Latino Officers Ass'n City of N.Y., Inc. v. City of New York,*
558 F.3d 159 (2d Cir. N.Y. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

i

**CASES**                                                                           **PAGES**

*Palmigiano v. Garrahy*,
448 F. Supp. 659 (D.R.I. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Reynolds v. Giuliani*,
2005 U.S. Dist. LEXIS 2743 (S.D.N.Y., Feb. 14, 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Robertson v. Jackson*,
972 F.2d 529 (4th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Withrow v. Concannon*,
942 F.2d 1385 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Haskins v. Stanton*,
794 F.2d 1273 (7th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

*McComb v. Jacksonville Paper Co.*,
336 U.S. 187 (1949). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Mattina v. Saigon Grill Gourmet Rest., Inc.*,
2009 U.S. Dist. LEXIS 13892 (S.D.N.Y. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*New York State Assoc.. for Retarded Children, Inc. v. Carey*,
631 F.2d 162 (2d Cir. 1980)
706 F.2d 956 (2d Cir. 1983)
551 F. Supp. 1165 (E.D.N.Y. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14, 15

*United States v. United Shoe Machinery Corp.*,
391 U.S. 244 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*King-Seeley Thermos Co. v. Aladdin Industries, Inc.*,
418 F.2d 31 (2d Cir. 1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Class v. Norton*,
376 F. Supp. 496 (D. Conn. 1974)
505 F.2d 123 (2d Cir. 1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Alexander v. Hill*,
707 F.2d 780 (4th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**CASES**          **PAGES**

*Syria v. Alexander*,
464 U.S. 874 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Cooper v. Aaron*,
358 U.S. 1 (1958). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hart v. Community Sch. Bd. of Brooklyn*,
383 F. Supp. 699 (E.D.N.Y. 1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

*Ex Parte Peterson*,
253 U.S. 300 (1920). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

*Cronin v. Browner,*
90 F. Supp. 2d 364, 377 (S.D.N.Y. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Brown v. Giuliani,*
Case No. 94-cv-02842, Dkt. # 52 (E.D.N.Y. Nov. 22, 1994). . . . . . . . . . . . . . . . . . . . . . 16

*Morel v. Giuliani,*
927 F. Supp. 622 (E.D.N.Y. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## Introduction

This case concerns the timely provision of critically needed assistance to Suffolk County's neediest residents. Nearly two and a half years after this Court signed the Order of Settlement on June 8, 2009 ("Order") requiring defendant to timely process the class members' applications for, *inter alia,* food stamp and Medicaid applications, including those that are part of a combined application[1], the monitoring data provided pursuant to the Order demonstrates defendant's continuing, systemic non-compliance with the Court's Order, and federal and state statutory and regulatory requirements. Thus, plaintiffs seek an order of contempt, an injunction requiring compliance, extension of the Court's jurisdiction over defendant for an additional thirty-six (36) months, such additional monitoring beyond that already required by the Order to ensure compliance, attorneys' fees for plaintiffs' monitoring and enforcement of the Order since June 8, 2009, to be resolved according to the procedure set forth in paragraph 37 of the Order, and other equitable relief, including, but not limited to the appointment of a special master.

As demonstrated in the Attorney Declaration and exhibits submitted therewith, and as discussed herein, according to the Welfare Management System ("WMS") data provided by the State and produced by Defendant pursuant to the Order, *see* Order ¶¶ 19-23, and sampling data created under the Order, *see* Order ¶¶ 24-26, defendant consistently fails to process food stamps and combined applications in a timely manner. For example:

- In the most recent sample provided by defendant covering September 2011,

---

[1]Pursuant to the Order, combined applications are defined as applications that "include client-initiated applications for Food Stamps and/or Medicaid, as specifically indicated on the New York State prescribed application form LDSS 2921 or its successors, which are part of an application for recurring and/or one time public assistance, including emergency assistance." Order ¶ 6.

29 % of food stamp applications that were part of a combined application were not timely processed[2];

- 29 % of  Medicaid applications that were part of a combined application were not timely processed.[3]

- In the last year, over 2,200 of Suffolk County's neediest residents did not have their food stamps applications timely processed;[4]

- In October 2011 alone, 421 food stamp applications were pending beyond the applicable deadlines;[5]

- According to defendant's own sampling reports, in samples drawn every three months between December 2009 until September 2011, nearly 100 % of the untimely food stamps applications were attributable to agency fault;[6] and

- In samples of combined application covering the same time period, nearly 100 % of the untimely food stamps and Medicaid applications that were part of a combined application were attributable to agency fault.[7]

---

[2] *See* Petra T. Tasheff Attorney Declaration (Tasheff Dec.) signed February 9, 2012, Table 5; Exh. D.

[3] *See* Tasheff Dec. Table 6; Exh. E.

[4] *See* Tasheff Dec. Table 1. Plaintiffs have asked for data for the month of January 2011 and are awaiting defendant's production.

[5] *See* Tasheff Dec. Table 4.

[6] *See* Tasheff Dec. Table 3.

[7] *See* Tasheff Dec. Table 6.

# Factual Background

Pursuant to the Order, the class consists of "*All* applicants, as defined herein, who ... applied for, are currently applying for, or will apply for Food Stamps and/or Medicaid in Suffolk County during the pendency of the Court's jurisdiction as provided herein." Order ¶ 7 (emphasis added). Pursuant to the Order, defendant is obligated to timely process all class member applications within the time frames required by federal and state statutes regarding Medicaid and food stamps. Order ¶¶ 9, 11, 14.

Defendant must process and determine eligibility for all Medicaid applications within 45 days, except in circumstances where the applicant claims to be eligible for Medicaid because of a disability, in which case the application must be processed within 90 days. Order ¶ 14. Defendant must make eligibility determinations and provide food stamps to eligible households within 30 days of application; however, if the application is eligible for expedited processing, New York state law requires that the application be processed within 5 calendar days, and federal law requires the application be processed with 7 calendar days. Order ¶¶ 9, 11. These time requirements must also be met where a food stamp or Medicaid application is part of a combined application. Order ¶¶ 9, 15.

In order for plaintiffs to regularly assess defendant's compliance with the timely processing requirements of the Order and federal and state law, the Order requires defendant to produce monitoring reports. Order ¶¶ 19-23. Additionally, monitoring of defendant's compliance with the state and federal requirements has been conducted via sampling every three months (Order ¶¶ 24-26), as discussed more fully below.

Primary monitoring reports are (a) WMS WINR 4113 reports ("4113"), which show, *inter alia,* "application activity during the month covered by the report" (Order ¶19); and (b) the Report of Food Stamps Pending For Greater Than 30 Days Reports ("Food Stamps Pends Report"), which shows, *inter alia,* the number of cases that are pending beyond the legal time frames on the day of the report. Order ¶ 22. Defendant's Food Stamp Pends Reports shown that between January and November 2011, defendant failed to timely process over 2,800 food stamp applications. Tasheff Dec. Table 4. The report for October 2011 report shows that defendant had not processed 421 food stamps applications within the required 30 days. *Id.*

The 4113 reports also evidence defendant's violations of the processing deadlines applicable to food stamps. For food stamp applications pending as of December 31, 2011, 368, or 23.25 %, had already been pending more than 30 days. Tasheff Dec. ¶ 32; Exh. A. In 2011, the combined month-end totals of overdue pending food stamp applications was more than 2,200. Tasheff Dec. Table 1. Furthermore, based upon the sampling of food stamp applications, defendant's violations continue. The sampling reports indicate that defendant has not achieved even 90% compliance since the sampling began. Tasheff Dec. Table 3. Additionally, for those applications not timely processed, in at least 3 of the samples, 100 % are the fault of the agency. Tasheff Dec. ¶ 39.

With regard to food stamps applications that are part of a combined application the numbers are even worse. According to the three samples generated in 2011, between 12 and 23 of the 100 sampled food stamp applications were untimely processed. Tasheff Dec. Table 5. According to defendant's own reports, all but one were defendant's fault. *Id.* Similarly, for Medicaid applications that are a part of a combined application, for the samples generated in

2011, between 24 and 35 applications were untimely processed. Tasheff Dec. Table 6. Once

again, according to defendant's own reports, all but three cases sampled were delayed because of

defendant's fault. *Id.*

During the course of the implementation of the Consent Order, plaintiffs have been in

repeated communications with defendant concerning his[8] performance. Order ¶ 33; Tasheff Dec.

¶¶ 48-70. Plaintiffs first contacted defendant in September 2010 concerning defendant's failure

to comply with the Consent Order and defendant finally produced a Corrective Action Plan

("CAP") in December 2010. Tasheff Dec. ¶ 51, Exh. G & ¶ 56, Exh K.

Thus far, defendant's corrective action has been woefully inadequate and failed to directly

address the causes of non-compliance. For example, defendant's December 2010 CAP failed to

include specific target dates for improvement, and even after plaintiffs informed defendant of this

failure on several occasions, defendant's May 2011 CAP also did not include specific target dates

for improvement. Tasheff Dec. ¶¶ 57, 62-63, Exh. O. Further, defendant's September 2011 CAP

was almost identical to the May 2011 CAP and did not address any of the questions and concerns

discussed at the parties' August 2011 meeting. Tasheff Dec. ¶ 67, Exh. S. After receipt in

September 2011 of another inadequate CAP that failed to address plaintiffs' questions and solely

repeated information from earlier versions, plaintiffs once again contacted defendant pursuant to

the Order. Tasheff Dec. ¶¶ 68-69, Exh. T. On November 2, 2011, plaintiffs informed defendant

that the CAPs "fail to suggest that defendant will achieve the required compliance without Court

intervention." Tasheff Dec. Exh. T. Defendant then responded with another inadequate CAP

---

[8]In June 2009, Commissioner Gregory Blass succeeded Janet DeMarzo as Commissioner
of the Suffolk County Department of Social Services.

"Update" on November 29, 2011. Tasheff Dec. ¶ 70, Exh. U. After reviewing defendant's CAP Update, on December 14, 2011, Plaintiffs informed defendant that, "although the Update addresses certain initiatives, it does not provide any information about when and how, or even whether, defendant will come into compliance with the Court's Order without additional Court intervention." Tasheff Dec. ¶ 71, Exh. V. Defendant responded in late January 2012 with a letter that once again failed to identify the specific sources of delay and lacked measurements for improvement. Tasheff Dec. ¶¶ 72-77, Exh. W.

Thus, pursuant to the Order, plaintiffs have satisfied their dispute resolution obligations and pursue the present motion.

**Argument**

**A.       Plaintiffs Are Entitled to The Relief Requested In Their Motion**

Plaintiffs are entitled to the requested order of contempt, an extension of jurisdiction, and to enforce the Order and Order of Settlement, and corresponding Consent Order. As the Supreme Court observed,

> A consent decree "embodies an agreement of the parties" and is also "an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees."

*Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 378 (1992)). *See also Berger v. Heckler*, 771 F.2d 1556, 1567-68 (2d Cir. 1985) (consent decrees are "hybrid" in the sense that, though construed as contracts, "they are . . . enforced as orders"); *New York v. United States Dep't of Commerce*, 739 F.Supp. 761, 768 (E.D.N.Y. 1990) (recognizing both contract features and court's discretion to enforce).

Moreover, courts have "inherent power to enforce consent judgments, beyond the remedial 'contractual' terms agreed upon by the parties [because] a consent judgment contemplates judicial interests apart from those of the litigants." *E.E.O.C. v. Local 580, Int'l Ass'n of Bridge, Structural and Ornamental Ironworkers, Joint Apprentice-Journeyman Educ. Fund*, 925 F.2d 588, 593 (2d Cir. 1991). Here, plaintiffs satisfy the test for issuance of a contempt order against defendant for his failure to timely process applications.

It is also well-established that the Court has continuing jurisdiction to issue orders as may be necessary to ensure compliance with consent orders. In *United States v. Local 359, United Seafood Workers*, 55 F.3d 64 (2d Cir. 1995), the parties had agreed to the appointment of an administrator to, *inter alia,* monitor and investigate possible violations of the injunction. Various extension orders were entered, but defendants objected to an extension that was entered *nunc pro tunc.* In ruling on the district court's retroactive extension of the administrator's term, the Second Circuit held that the extension was well within the District Court's power and that until the parties to such an instrument have fulfilled their express obligations, the Court has continuing authority to ensure compliance. *Id.* at 68-69. Here, defendant has not fulfilled his obligations under the Order. As a consequence, defendant has violated this Court's order.

**B.     Plaintiffs Are Entitled to an Order of Contempt**

Generally, a court's inherent power to hold a party in civil contempt may be exercised when (1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply. *See EEOC v. Local 638, Local 28 of Sheet Metal Workers' Int'l Ass'n*, 753 F.2d 1172, 1178 (2d Cir. 1985), *aff'd*, 478 U.S. 421 (1986); *Powell v. Ward*, 643 F.2d

7

924, 931 (2d Cir.) (per curiam), *cert. denied*, 454 U.S. 832 (1981); *Hunter TBA, Inc. v. Triple V Sales*, 250 F.R.D. 116, 119 (E.D.N.Y. 2008).

1.    The Order is Clear and Unambiguous

In order to find a party in contempt of an Order, "the Order must leave 'no uncertainty in the minds of those to whom it is addressed,' and one 'must be able to ascertain from the four corners of the Order precisely what acts are forbidden.'" *Hunter TBA, Inc.*, 250 F.R.D. at 119 (citing *King v. Allied Vision*, 65 F.3d 1051 (2d Cir. 1995). Specifically, this Court has found that a consent decree satisfies this requirement where the defendant's obligations were clearly listed and the Order required periodic monitoring documents. *See New York v. U.S. Capital Funding, LLC,* 2011 U.S. Dist. LEXIS 87975 (E.D.N.Y. Aug. 9, 2011).

Here, defendant's duty is clear and unambiguous. Under the terms of the Order, defendant must process applications within strict time frames set forth by federal and state law. For example, the requirement as to Medicaid applications, including those that are part of a combined application, makes clear that defendant must process all applications within 45 days. Order ¶ 14. Similarly, because of the harm caused by lack of food, food stamp applications must be processed within 30 days; unless the household is very poor, in which case the issuance deadline is shortened to five days from application. Order ¶¶ 9,11. For purposes of deciding a contempt motion, the Order only excuses individual and isolated failures to meet these time standards. Order ¶ 34. Defendant's obligations set forth in the Order signed by this Court are clear and unambiguous.

2.     Plaintiffs Have Presented Clear and Convincing Evidence of Defendant's Non-
       Compliance with the Order.

The moving party has the burden to provide clear and convincing evidence of defendant's

non-compliance.  *See Latino Officers Ass'n City of N.Y., Inc. v. City of New York*, 558 F.3d 159

(2d Cir. N.Y. 2009).  However, defendant's non-compliance need not be willful. *U.S. Capital*

*Funding, LLC*, 2011 U.S. Dist. LEXIS 87975, at *15 (quoting *King*, 65 F.3d at 1058).

Here, the relevant data demonstrates non-compliance.  For example, more than 11%

percent of food stamps applications were processed late in each of eleven months in 2011, and in

one of those months, the percentage rose to 19 %. Tasheff Dec. Table 1.  The data for combined

applications shows even higher non-compliance.  Tasheff Dec. Tables 5 & 6.  The proof of non-

compliance is derived from monitoring reports defendant agrees ought be the yardstick used to

measure his progress, including those defendant generates internally.  Order  ¶¶ 19-24.  The data

provided and relied upon by defendant overwhelmingly demonstrates non-compliance with the

federal and state timely processing requirements.

3.     Defendant Has Not Diligently Attempted in a Reasonable Manner to Comply
       With the Order.

A court will find contempt where the evidence demonstrates that a defendant "violated

the obligations of the order by 'failures of diligence, effective control, and steadfast purpose to

effectuate the prescribed goals.'" *Powell v. Ward*, 487 F.Supp. 917, 933 (S.D.N.Y.  1980) *aff'd*

*on this point*, 643 F.2d 924, 931 (2d Cir.) (quoting *Palmigiano v. Garrahy*, 448 F. Supp. 659,

670 (D.R.I. 1978)). Here, while defendant has presented plaintiffs with several CAPs, which he

asserts are to address systemic non-compliance, he has not undertaken enough reasonable steps to

sufficiently address his noncomplaince with the Order.   As described in the attached Tasheff

9

Dec., defendant's CAPs are woefully inadequate and fail to address the causes of non-compliance. Additionally, defendant's May and September 2011 CAPs fail to improve upon the initial December 2010 CAP, to address target dates for improvement, and answer questions plaintiffs posed to defendant during the dispute resolution stage. Tasheff Dec. ¶¶ 61-63, 67. Defendant's most recent letter continues to fail to identify the specific sources of delay or set measurements for improvement. Tasheff Dec. ¶ 72. Defendant's attempts at corrective action fail to demonstrate diligence, effective control over compliance, and steadfast purpose in achieving compliance with the Consent Order.

Indeed, defendant has a duty beyond the four corners of this Order and Order of Settlement to comply absolutely with timely processing requirements set forth in federal and state law. *Reynolds v. Giuliani*, 2005 U.S. Dist. LEXIS 2743, at *49-50 (S.D.N.Y., Feb. 14, 2005) (rejecting City defendant's contention that only substantial compliance required and holding that Food Stamp and Medicaid Acts require strict compliance); *Robertson v. Jackson*, 972 F.2d 529, (4th Cir. Va. 1992) (affirming order requiring full compliance with federal food stamp timely processing requirements); *Withrow v. Concannon*, 942 F.2d 1385, 1387-88 (9th Cir. 1991) ((holding that strict, not substantial, compliance is required under Food Stamp and Medicaid Acts); *Haskins v. Stanton*, 794 F.2d 1273, 1277 (7th Cir. 1986) (holding that Food Stamp Act requires strict compliance although recognizing inevitability of a few inadvertent errors ); *see also* Order ¶ 46.

Here, "[s]ince the purpose is remedial, it matters not with what intent the defendant did the prohibited act." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949). Instead, the question is whether for the alleged contemnor's non-compliance there is "credible evidence that

its lack of compliance with the consent judgment was unavoidable or otherwise reasonable."

*Mattina v. Saigon Grill Gourmet Rest., Inc.*, 2009 U.S. Dist. LEXIS 13892, *20 (S.D.N.Y. 2009).

In the instant action, defendant can point to no intervening factor that precluded compliance with

his clear duty.  The test is not whether defendant took any steps, but whether he took the steps

reasonably necessary to comply.

**C.      Plaintiffs Are Entitled to an Injunction Compelling Compliance and Extending the
         Jurisdiction of the Court and Required Monitoring**

Assuming, *arguendo*, that this Court does not find civil contempt warranted, plaintiffs are

still entitled to an injunction compelling defendant to fulfill his obligations under the Order and

extending this Court's jurisdiction in order to ensure such compliance.  That such relief was

contemplated by the parties as available to the Court is without question.  Citing to the parties'

Order, ¶ 45, the Consent Order specifically provides that  "Plaintiffs may move for enforcement

of this Order and Order of Settlement, including the remedy of extension of the Court's

jurisdiction" Order, ¶ 45.

This Court has the unquestionable authority to grant the injunction and extend its

jurisdiction.  As the Second Circuit observed in *New York State Assoc.. for Retarded Children,*

*Inc. v. Carey*, 631 F.2d 162, 165 (2d Cir. 1980), where the remedy of contempt was not available,

"a federal court can order the state [. . .] to take the steps necessary to rectify the violations."

Indeed, it is inherently within the Court's power to modify the decree and to issue an injunction

where the "the purposes of the litigation as incorporated in the decree have not been fully

achieved."  *United States v. United Shoe Machinery Corp.*, 391 U.S. 244, 248 (1968);

*King-Seeley Thermos Co. v. Aladdin Industries, Inc.*, 418 F.2d 31, 34 (2d Cir. 1969) (Court may

modify consent decree and issue injunction to achieve purpose of decree).

Not only may the Court issue orders necessary to fulfill the terms of the consent decree embodied in the Order, but "though a court cannot randomly expand or contract the terms agreed upon in a consent decree, judicial discretion in flexing its supervisory and enforcement muscles is broad." *EEOC v. Local 580, International Association of Bridge, Structural & Ornamental Ironworkers*, 925 F.2d at 593. This Circuit has made clear that:

> Consent decrees are subject to continuing supervision and enforcement by the court. "[A] court has an affirmative duty to protect the integrity of its decree. This duty arises where the performance of one party threatens to frustrate the purpose of the decree." A defendant who has obtained the benefits of a consent decree -- not the least of which is the termination of the litigation -- cannot then be permitted to ignore such affirmative obligations as were imposed by the decree. . . . Ensuring compliance with a prior order is an equitable goal which a court is empowered to pursue even absent a finding of contempt.

*Berger*, 771 F.2d at 1568-69 (citations omitted).

In *Class v. Norton*, 376 F. Supp. 496 (D. Conn. 1974), *aff'd in part and rev'd in part on other grounds*, 505 F.2d 123 (2d Cir. 1974), the District Court was asked to enforce an order mandating compliance with timely processing requirement in public entitlement programs similar to those at issue here. While the defendant in *Class* pointed to impediments such as insufficient staff and certain processing requirements, the Court concluded that

> continued non-compliance cannot and will not be tolerated, and I find it necessary to draw on the "broad discretionary power" of the trial court to fashion equitable remedies which are "a special blend of what is necessary, what is fair, and what is workable."

*Class*, 376 F. Supp. at 501. The relief entered by the *Class* court was far more extensive than that sought here and it included extensive additional processing and reporting requirements. *See*

*also Alexander v. Hill*, 707 F.2d 780, 783 (4th Cir. 1983), *cert. denied sub nom. Syria v. Alexander*, 464 U.S. 874 (1983).

Thus, here an order extending the jurisdiction of the court and requiring timely compliance serves multiple purposes even if the Court declines to find defendant in contempt. Such a remedy fulfills the purpose of the Order by mandating that defendant meet federal and state processing timelines.

Additionally, such an order does little more than require defendant to fulfill federal and state processing requirements. Indeed, as the Seventh Circuit has observed as to an injunction requiring state officials in Indiana to timely process food stamp applications:

> We do not see how enforcing compliance imposes any burden on them. The Act itself imposes the burden; this injunction merely seeks to prevent the defendants from shirking their responsibilities under it. We also fail to see how enforcing a statute designed to promote the public welfare disserves the public.

*Haskins*, 794 F.2d at 1277.

Finally, the requested relief leaves with the discretion of defendant the means to achieve compliance. He may choose to hire more staff, to reallocate existing staff, change practices, modify policies, or some combination thereof. However, what he may not do is delay providing critical assistance to needy families and individuals.

**D.    Plaintiffs Request That This Court Exercise Its Power to Appoint a Special Master**

A court has the long-standing power to order appropriate relief to protect its judgments, including consent decrees, from future violations. *Cooper v. Aaron*, 358 U.S. 1 (1958); *Hart v. Community School Board of Brooklyn*, 383 F. Supp. 699, 755 (E.D.N.Y. 1974). Appointment of a special master is considered an appropriate instrument to enforce a court's decree. *Ex Parte*

*Peterson*, 253 U.S. 300, 312-13 (1920).

Additionally, pursuant to Fed. R. Civ. P 53(a)(1)(B)(ii), a Court may appoint a special master to hold trial proceedings and make recommendations on issues to be decided without a jury if the appointment is warranted by "some exceptional condition." Further, a court may also appoint a special master to address post-trial matters that "cannot be effectively and timely addressed" by the court itself. Fed. R. Civ. P. 53(a)(1)(C). The Rule 53 power includes appointing a special master to enforce a consent decree.

In this Circuit, where the purpose of a special master is to enforce a judicial decree, a court has wider latitude to appoint a master. *Carey*, 706 F.2d 956, 962-65 (2d Cir. 1983) (upholding district court decision assigning a special master to oversee consent decree protecting the constitutional rights of disabled children); *Cronin v. Browner,* 90 F. Supp. 2d 364, 377 (S.D.N.Y. 2000) (court appointed a special master to monitor consent decree). Where a defendant has made "limited progress" in the implementation of a consent decree, a court is permitted to appoint a special master to oversee compliance, particularly where the special master is better placed than the court because of timing and expertise. *Cronin*, 90 F. Supp. 2d at 377-78. Further, even where a defendant has made "good faith and efforts," such efforts are no excuse not to comply with a Court's order, particularly those related to protections for the most vulnerable in society. *New York State Ass'n for Retarded Children v. Carey,* 551 F. Supp. 1165*,* 1179 (E.D.N.Y. 1982) (court found that regardless of defendant's efforts, defendant had not substantially complied with the Order).

In *Carey*, a case also concerning the neediest members of society, after plaintiffs demonstrated defendant's consistent failure to comply with the order, the district court declared

defendant in non-compliance and ordered compliance, extension of jurisdiction, and the appointment of a special master. *Id.* at 1192. Specifically, the court appointed a special master to "develop[] a plan to eliminate widespread violations of the Consent Judgment ...; to report periodically non-compliance with the provisions of the Consent Judgment; to assist in the accomplishment of the community placement provisions of the Consent Judgment; and finally, to monitor the implementation of the provisions of the Consent Judgment." *Id.* at 1181.

Here, a special master should be appointed under either provision of Rule 53 or the court's own powers. First, as demonstrated in the Tasheff Declaration and attached documents, defendant has not only made limited progress towards achieving compliance but has consistently failed to comply with this Court's Order with regard to the processing of food stamps and combined applications. Further, although defendant has made attempts at corrective action, plaintiffs have demonstrated that defendant has not addressed the causes of non-compliance in an efficient and successful manner. Therefore, defendant's lack of compliance and inability to meaningfully address the causes of non-compliance are exceptional conditions that warrant appointing a special master.

Second, as this Court has noted, the benefits programs at issue in this case are complex.[9] In fact, this Court specifically stated at the June 8, 2009 Rule 23 hearing that requiring the court to craft a remedy in this case would be an "extremely complex and difficult process." Hearing Tr. at 13, June 8, 2009. Therefore, an individual with specific public benefits administration expertise would be most able to assist this Court in implementation and enforcement of the Order

---

[9]In the June 8, 2009 Rule 23 hearing this Court stated that this case, involving the food stamps and Medicaid programs, is complex. Transcript of June 8, 2009 Rule 23 Hearing at 10 and 13.

in the most efficient and timely manner.

Further, in aid of the court's power to take actions required to effectuate its own orders, an Eastern District of New York court has appointed a special master with public benefits administration expertise in a similar case as early as the preliminary injunction stage.  In *Brown v. Giuliani*, a class action concerning the administration for public benefits, after granting plaintiffs' Motion for Preliminary Injunction, the Court appointed a special master to "aid ... in developing a plan for the prompt disposition of requests for change of circumstances grants of [public assistance] benefits."  *Brown v. Giuliani*, Case No. 94-cv-02842, Dkt. # 52 (E.D.N.Y. Nov. 22, 1994); *see also Morel v. Giuliani*, 927 F. Supp. 622, 629 n. 10 (E.D.N.Y. 1995). Further, in other cases involving similar complex systemic government systems, courts in the Eastern District have appointed special masters with very specific expertise.  *See e.g. Carey,* 551 F. Supp. at 1192-94 (court appointed master with expertise in the institutions for the mentally disabled);  *Hart,* 383 F. Supp. at 766-67  (court appointed  master with expertise in government housing laws).

In the instant case, plaintiffs request that this Court appoint a special master experienced in the administration of government benefits programs to oversee future compliance with this Court's order and who could carry out the following responsibilities in a timely and efficient manner.  Similar to the special masters appointed in *Brown* and *Carey*, here the special master could investigate causes of untimely processing by reviewing defendant's policies, procedures, and training systems, visiting Social Services offices to perform on-site reviews, and interviewing relevant staff members; complete a report on the causes of untimely processing; and make recommendations as to how to efficiently address the causes of noncompliance, including

16

feedback on the efficacy of defendant's own initiatives and suggesting additional solutions.

<u>Conclusion</u>

For the reasons set forth herein, plaintiffs request the Court issue an order of contempt against defendant, enjoin defendant's compliance with the prior Consent Order, extend the jurisdiction of the Court an additional 36 months, such additional monitoring beyond that already required by the Order to ensure compliance, attorneys' fees for plaintiffs' monitoring and enforcement of the Order since June 8, 2009, to be resolved according to the procedure set forth in paragraph 37 of the Order, and provide for other equitable relief, including the appointment of a special master with expertise in the administration of public benefits.

February 9, 2012                                    Respectfully submitted,

                                                    By:      */s/Laura F. Redman*
                                                    **NATIONAL CENTER FOR LAW
                                                    AND ECONOMIC JUSTICE, INC.**
                                                    Marc Cohan
                                                    Petra T. Tasheff
                                                    Laura F. Redman
                                                    Stephane Ariot
                                                    275 Seventh Avenue, Suite 1506
                                                    New York, NY 10001
                                                    Tel. (212) 633-6967

                                                    **EMPIRE JUSTICE CENTER**
                                                    Linda Hassberg
                                                    Touro Law Center PAC
                                                    225 Eastview Drive, Room 222
                                                    Central Islip, New York 11722
                                                    Tel. (631) 650-2306

                                                    **EMPIRE JUSTICE CENTER**
                                                    Bryan Hetherington
                                                    One West Main Street, Suite 200
                                                    Rochester, NY  14614
                                                    Tel. (585) 454-4060